[Cite as *Brownlee v. State Med. Bd.*, 2013-Ohio-4989.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John David Brownlee, M.D., | : | |
| Appellant-Appellant, | : | |
| | : | No. 13AP-239 |
| v. | : | (C.P.C. No. 12CV-13607) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on November 12, 2013

*Graff & McGovern, LPA, Douglas E. Graff* and *Levi T. Tkach*, for appellant.

*Michael DeWine*, Attorney General, and *Henry G. Appel*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

T. BRYANT, J.

{¶ 1} Appellant, John David Brownlee, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio (the "Board"), permanently revoking appellant's certificate to practice allopathic medicine and surgery in the state of Ohio. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The record reflects that appellant obtained his license to practice medicine and surgery in 1998. In 2006, appellant was prescribed Vicodin following an elbow surgery, after which he began self-prescribing Vicodin. Appellant eventually started writing Percocet prescriptions in the names of fictitious patients in order to obtain Percocet for his own use. He also wrote prescriptions using the names and DEA numbers

of other physicians without their consent.  Criminal charges resulted, and appellant entered inpatient treatment for opiate dependence in September 2006.[1]

{¶ 3}  In October 2006, appellant entered into a Step I Consent Agreement with the Board under which his license to practice medicine was suspended.  Appellant admitted that his drug of choice was Percocet.  He further admitted that he was impaired in his ability to practice according to acceptable and prevailing standards of care due to the habitual and excessive use or abuse of drugs.

{¶ 4}  In August 2007, appellant entered into a Step II Consent Agreement with the Board under which his license to practice was reinstated pursuant to a minimum of five years of probation.  That agreement explained that appellant had previously pled guilty to deception to obtain a dangerous drug, in violation of R.C. 2925.22, and illegal possessing of drug documents, in violation of R.C. 2925.23, both felonies.  As a result, appellant was ordered into treatment in lieu of conviction.  The agreement also confirmed appellant had completed 28 days of inpatient treatment for opiate dependence in October 2006.

{¶ 5}  The probationary terms of that agreement required, among other things, random urine screens for drugs and alcohol, regular attendance at rehabilitation meetings, quarterly probationary meetings with the Board or a Board representative, and quarterly filings regarding appellant's compliance with the Board's monitoring program. Appellant was also required to have a Board-approved physician monitor his practice of medicine and review his patient charts.  He was further obligated to obey all federal, state, and local laws, as well as all rules governing the practice of medicine in Ohio.  Appellant was required to completely abstain from the use of alcohol and the personal use or possession of drugs, except for those appropriately prescribed to him by someone with full knowledge of his history of chemical dependence.

{¶ 6}  On July 13, 2011, while the 2007 consent agreement was still in effect, the Board issued appellant a notice of opportunity for a hearing informing him that the Board

---

[1] The record also indicates that appellant had substance abuse issues that required treatment in 1993 and 1994.  As a result, in 1998, he entered into a consent agreement with the Board regarding restrictions on his license for a minimum of three years.  However, the trial court did not discuss these prior instances, and given the passage of time between the instances and appellant's 2006 relapse, we will not discuss them in detail either.

proposed to take disciplinary action against his medical license.  The Board's allegations included the following:

> • Dr. Brownlee entered into a Step II Consent Agreement with the Board in 2007, based on his impairment due to drug use, his relapse on Percocet in 2006, and his guilty pleas to criminal charges regarding falsification of prescriptions in order to obtain Percocet; and
>
> • [I]n 2010, Dr. Brownlee inappropriately obtained prescriptions for Vicodin and Percocet by asking resident physicians under his supervision to write or call in prescriptions for a person who is Dr. Brownlee's relative.

(R. 39, at 44.)  The Board further alleged that: (1) appellant engaged in the felony of deception to obtain a dangerous drug; (2) he violated the limitations placed on his license; (3) he violated or assisted another in violating a Board rule by utilizing controlled substances for a family member; and (4) he violated or assisted another in violating a Board rule by prescribing to persons not seen by the physician.

{¶ 7}  Appellant requested a hearing, which was held from December 6 to December 8, 2011.  Following the hearing, the Board's hearing examiner issued a 56-page report and recommendation ("R&R") including findings of fact and conclusions of law. One notable finding of fact was:

> In his sworn answers to the Board's interrogatories, Dr. Brownlee admitted that on eight occasions, he had requested resident physicians to provide prescriptions to Patient 1, for either Percocet or Vicodin, without the residents having personally, physically examined and diagnosed Patient 1, and he further identified five residents who had provided these prescriptions upon his request.  During the hearing, Dr. Brownlee testified that he had unintentionally omitted two additional prescriptions he had requested from physicians who had not personally examined Patient 1, and these prescriptions were for hydrocodone with acetaminophen.

(Patient 1 is appellant's family member.)  (R. 39, at 196-97.)

{¶ 8}  The Board considered the R&R at its October 10, 2012 meeting and, after amending one of the conclusions of law, adopted the R&R and entered an order permanently revoking appellant's certificate to practice allopathic medicine and surgery

in the state of Ohio.  The Board found that appellant engaged in the four numbered offenses above.

{¶ 9}   These conclusions were based on incidents that occurred from March to May 2010 while appellant was an attending physician and director of the Surgical Intensive Care Unit at Huron Hospital, which is part of the Cleveland Clinic Foundation ("CCF").  As part of his duties, appellant oversaw and directed the work of subordinate resident physicians.

{¶ 10} Appellant claimed that Patient 1 was suffering from severe and debilitating migraine headaches during that time, and he asked resident physicians to write her prescriptions for pain medication to treat the migraines.  However, testimony at the hearing from six residents revealed that appellant did not mention migraine headaches. Instead, he gave a variety of deceptive reasons in order to obtain narcotics for Patient 1.

{¶ 11} Specifically, the hearing examiner found that, on March 6, 2010, appellant asked a resident under his supervision to prescribe pain medication for Patient 1 because she was experiencing symptoms of a urinary tract infection.  The resident complied and called in a prescription for Vicodin.  On March 12, 2010, appellant asked a second resident under his supervision to write a prescription for Percocet for Patient 1 because she had a twisted ankle.   The resident complied.   On April 2, 2010, appellant asked another resident to write a prescription for Patient 1, describing her as a patient on whom he had recently performed surgery.  The resident wrote a prescription for Percocet.  On April 8, 2010, appellant asked another resident to write a prescription for a surgical patient who was meeting him at the hospital.  The resident complied and wrote a prescription for Percocet in the name appellant provided, which was Patient 1's name before she filed a formal name change in 2009.  On May 13, 2010, appellant asked another resident under his supervision to write a prescription for Percocet for a relative because she had a sinus infection and back pain.  The resident complied.  On May 17, 2010, appellant asked another resident to write a prescription for Patient 1.  After providing Patient 1's name, appellant commented, "not *that* [Patient 1's name]."  (Emphasis sic.) (R. 39, at 96.)  The resident complied and wrote a prescription for Percocet.

{¶ 12} Based  on  these  findings,  appellant's  status  under  the  2007  consent agreement, and appellant's admissions in his answers to the Board's interrogatories and

at the hearing, the Board's hearing examiner proposed an order permanently revoking appellant's license to practice medicine and surgery.

{¶ 13} The hearing examiner added credibility determinations as well, stating in part:

> The Hearing Examiner generally believed the testimony of the residents. Although there were some discrepancies in their testimony, particularly some inconsistencies between what was recalled in July 2010 affidavits and what was recalled during the December 2011 hearing, the discrepencies were found to be relatively minor, and the final testimony at the hearing was found to be credible in the crucial areas.
>
> If there had been one resident contradicting Dr. Brownlee's testimony, there might have been a question of which individual was more credible, but, here, Dr. Brownlee's testimony was contradicted by five witnesses whose demeanor and tone indicated trustworthiness and whose trestimony was more consistent with other evidence as a whole.
>
> * * *
>
> The Hearing Examiner has no doubt whatsoever that Dr. Brownlee lied repeatedly during the hearing. The Hearing Examiner is convinced that Dr. Brownlee repeatedly misrepresented facts to the residents in order to get them to provide the prescriptions for opioids that he wanted. Rarely has a witness' tone, facial expression, and demeanor so transparently signaled a lack of credibility. In addition, his testimony was inconsistent with other evidence that was found to be credible, and at times his testimony was internally inconsistent.
>
> Patient 1's testimony was unreliable in several crucial areas of testimony. She changed her answers repeatedly. At times she was noncommittal and evasive. Her tone, facial expression, and demeanor made clear that she was anxiously trying to say whatever she thought might help Dr. Brownlee and make her own behavior seem justifiable.

(R. 39, at 75-76.)

{¶ 14} As stated above, the hearing examiner's R&R was adopted by the Board on October 10, 2012, and appellant's license to practice medicine and surgery was permanently revoked.

{¶ 15} In accordance with R.C. 119.12, appellant appealed the Board's order to the Franklin County Court of Common Pleas on October 29, 2012. Appellant alleged the order was not supported by reliable, probative, and substantial evidence and that it was in contravention of law. He assigned the following errors: (1) "[t]he Order was not based upon reliable, probative, and substantial evidence because the Board's witnesses lacked credibility"; (2) "[t]he Order of permanent revocation constitutes disparate treatment against Dr. Brownlee violating the Americans with Disabilities Act"; (3) "[t]he Board action and discipline against Dr. Brownlee constitutes selective enforcement"; and (4) "Hearing Examiner refused to allow presentation of testimony by several Respondent witnesses." (R. 70, at 3.) The trial court found all of appellant's assignments of error lacked merit and overruled them on February 21, 2013. It is from that judgment appellant appeals to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Appellant presents the following assignments of error for our review:

> First Assignment of Error: The common pleas court abused its discretion when affirming an Order supported by unreliable evidence.
>
> Second Assignment of Error: The Common Pleas Court erred by misapplying the doctrine of selective enforcement.
>
> Third Assignment of Error: The Common Pleas Court Erred as a matter of Law by misinterpreting the Board Rule on post-commencement subpoenas.

## III. STANDARDS OF REVIEW

{¶ 17} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. *Levine v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-962, 2011-Ohio-3653, ¶ 12. In applying this standard, the trial court "must give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 18} The Supreme Court of Ohio has defined the concepts of reliable, probative, and substantial evidence as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a

> reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes deleted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 19} On appeal to this court, the standard of review is more limited. *Smith v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-234, 2012-Ohio-4423, ¶ 13. Unlike the trial court, a court of appeals does not determine the weight of the evidence. *Id.*, citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). Furthermore, an appellate court must not substitute its judgment for that of an administrative agency or a trial court absent the approved criteria for doing so. *Rossford Exempted* at 707.

{¶ 20} In reviewing the court of common pleas' determination that the Board's order was supported by reliable, probative, and substantial evidence, this court's role is confined to determining whether the court of common pleas abused its discretion. *Smith* at ¶ 13. An abuse of discretion occurs when a decision is unconscionable, unreasonable or arbitrary. *Weiss v. State Med. Bd. of Ohio*, 1oth Dist. No. 13AP-281, 2013-Ohio-4215, ¶ 15. However, on the question of whether the Board's order was in accordance with the law, this court's review is plenary. *Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

## IV. DISCUSSION

{¶ 21} Preliminarily, we note that appellant's arguments in his briefs stray from his assignments of error. For example, while appellant's first assignment of error specifically identifies reliability of the evidence as the issue, appellant also argues that the record lacks substantial evidence supporting the Board's order. Additionally, it is unclear whether appellant is making an independent claim pursuant to the Americans with Disabilities Act ("ADA"), or just relying on the ADA to buttress the selective enforcement claim that appears in his second assignment of error. In any event, pursuant to App.R. 12(A)(1)(b), an appellate court must " 'determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16.' Thus, this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079,

2010-Ohio-553, ¶ 70, quoting *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5.  Accordingly, we will address each of appellant's assignments of error as written and disregard any extraneous arguments.  *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9.

{¶ 22} Pursuant to his first assignment of error, appellant asserts that the Board's order was not supported by reliable evidence; therefore, the trial court abused its discretion in affirming the order.  We disagree.

{¶ 23} Appellant focuses on the testimony of the resident physicians during the hearing.  He claims their testimony was unreliable because it conflicted with statements in prior affidavits.  He also claims the residents were "coached" by CCF prior to the hearing and that counsel for CCF relentlessly objected during the hearing, which precluded testimony by the residents that would have benefited appellant.  (Appellant's brief, at 4.)  Finally, appellant contends that the testimony of Dr. Raphael Chung, appellant's monitoring physician under the consent agreement, undermines the reliability of the residents' affidavits and establishes that appellant is " 'not somebody who has exhibited either psychological or behavioral evidence of relapse.' "  (Appellant's brief, at 16, quoting Tr. 122.)  These assertions lack merit and/or fail to assist appellant in establishing an abuse of discretion by the trial court.

{¶ 24} Appellant does not identify the inconsistencies between the residents' live testimony and their affidavits, to which he refers in his briefs.  Instead, he directs this court to his trial court brief and his objections to the hearing examiner's R&R that appear in the record.  We have reviewed that brief and the objections, and we agree with the trial court that the "inconsistencies were not significant, particularly in light of the appellant's admissions," which we will discuss shortly.  (R. 73, at 10.)  Furthermore, the hearing examiner and, in turn, the Board found that "the discrepancies were * * * relatively minor, and the final testimony [of the residents] at the hearing was found to be credible in the crucial areas." (R. 39, at 75.)  Based on our independent review of the record, we conclude that these findings are not arbitrary or unreasonable.

{¶ 25} We likewise do not find evidence that the residents were "coached" by CCF.  It is true that CCF conferred with the residents regarding the facts of this case prior to the hearing.  CCF was investigating appellant's behavior internally, which led to his termination. It is not surprising, nor do we find it improper, that CCF would communicate

with the same residents that the Board called as witnesses under these circumstances. Furthermore, appellant subsequently sued CCF, and the hearing examiner made a ruling that there was an attorney-client relationship between counsel for CCF, who was present at the hearing, and at least one of the residents who was still employed by CCF. Therefore, we do not find it odd or inappropriate that counsel for CCF conferred with the residents leading up to the hearing. In any event, each resident physician that testified did so under oath, and the hearing examiner found their testimony credible. We do not find that CCF's interaction with the residents previous to the hearing undermines that credibility determination.

{¶ 26} Appellant also alleges that counsel for CCF interposed so many objections during the hearing that she impeded the flow of evidence, which was beneficial to appellant, into the record. The Board counters this argument by identifying six objections that CCF's counsel made during the three-day hearing. Appellant's response was to identify two more speaking objections and two instances of alleged nonverbal communication with the residents. We have examined these instances, and do not agree with appellant that CCF's counsel's conduct was obstructive.

{¶ 27} Lastly, appellant's assertion about Dr. Chung undermining the reliability of the resident's affidavits is inconsequential. The inconsistencies between the affidavits and the residents' live testimony, as well as the value of that testimony, has already been addressed. Additionally, Dr. Chung was not present during the interactions between appellant and the residents, during which appellant asked them to prescribe medication for Patient 1. Therefore, Dr. Chung's opinion regarding those interactions holds little value. Finally, it is noted throughout the record that the Board neither alleged nor found that appellant relapsed in his addiction to prescription medicine in 2010. Therefore, Dr. Chung's testimony that appellant did not exhibit signs of relapse is not relevant.

{¶ 28} What appellant fails to acknowledge in this appeal are his own admissions that align with the Board's allegations and findings. As the trial court noted:

> In his sworn answers to the Board's interrogatories, the appellant admitted that on eight occasions he requested resident physicians under his supervision to provide either Percocet or Vicodin for a family member without any of the identified five residents having personally, physically examining and/or diagnosing Patient 1. * * * During the hearing phase, the appellant also testified that he had

> unintentionally omitted two additional prescriptions he had
> required from physicians who had not personally examined
> Patient 1, and that those prescriptions were for hydrocodone
> with acetaminophen.

(R. 73, at 8-9.)

{¶ 29} Thus, the trial court concluded, "the record is replete with evidence, most convincingly by the appellant's own admissions, that overwhelming[ly] supports the Board's Order." (R. 73, at 8.) We do not find this assessment inaccurate, nor do we find it unconscionable, unreasonable or arbitrary. Therefore, appellant's first assignment of error alleging that the trial court abused its discretion in affirming the Board's order because it was not supported by reliable evidence is overruled.

{¶ 30} Pursuant to his second assignment of error, appellant asserts that the trial court erred in analyzing his selective enforcement claim. We disagree.

{¶ 31} " ' "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." ' " *Founder's Women's Health Ctr. v. Ohio State Dept. of Health*, 10th Dist. No. 01AP-872, 2002-Ohio-4295, ¶ 31, quoting *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 531 (1999), quoting *State v. Flynt*, 63 Ohio St.2d 132, 134 (1980).

{¶ 32} Thus, appellant must establish that he and the resident physicians, who were also involved in prescribing to Patient 1 but were not disciplined by the Board, were similarly situated.[2] Appellant cannot do so.

{¶ 33} As the trial court pointed out:

> [T]he only reason the resident physicians were writing the
> prescriptions in the first place for the appellant's family
> member were under false pretenses at the direction of their
> supervisor, and through the appellant's deception. The fact

---

[2] The trial court mentioned there is no evidence in the record establishing the resident physicians involved in this case were, or were not, disciplined. We will address appellant's second assignment of error as if they were not.

> that is most blatant to this Court, and the one that appellant's counsel continually has chosen to ignore, is that the appellant was the ***supervisor*** of these resident physicians and by no stretch of the imagination can one conclude that the resident physicians were similarly situated to the appellant. Moreover, the other pertinent fact that appellant's counsel continues to ignore is that the appellant admitted to his unlawful conduct.

(Emphasis sic.) (R. 73, at 12-13.)

{¶ 34} This court also notes that appellant admitted to participating in at least ten instances of inappropriate prescribing, while each resident only appears to have participated in one or two instances. Appellant was procuring controlled substances for a family member while the residents were not, and there is no indication that any of the residents were subject to practice restrictions while appellant was subject to the 2007 consent agreement with the Board during the incidents.

{¶ 35} Given these factors, among others, it is beyond dispute that appellant and the residents were not similarly situated. Therefore, appellant's selective enforcement claim fails at the outset. Because he cannot establish a prima facie claim, we do not find it necessary to address the remainder of his argument referencing the ADA. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 82, citing *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 274-75 (2008). Accordingly, appellant's second assignment of error is overruled.

{¶ 36} Pursuant to his third assignment of error, appellant asserts the trial court erred as a matter of law by misinterpreting the Board's rule on post-commencement subpoenas. We cannot agree.

{¶ 37} Appellant's argument on appeal, as the assignment of error suggests, focuses on the Board's authority to issue subpoenas once a hearing has already commenced. Appellant refers this court to Ohio Adm.Code 4731-13-13(E), which states:

> After the hearing has commenced the hearing examiner may order the issuance of subpoenas for purposes of hearing to compel the attendance and testimony of witnesses and production of books, records and papers. Copies of such subpoenas shall be issued to each representative of record.

However, appellant did not direct the trial court to Ohio Adm.Code 4731-13-13(E), nor did he make arguments based on Ohio Adm.Code 4731-13-13(E) below. Therefore, we cannot

find the trial court erred in misinterpreting this particular rule. Indeed, the trial court was not even asked to consider it.

{¶ 38} Appellant also reiterates arguments he made before the trial court pursuant to Ohio Adm.Code 4731-13-13(C). However, these arguments do not comport with his assignment of error and, as we stated above, this court rules on assignments of error only and will not address mere arguments. *Bonn* at ¶ 9. In the interest of justice, though, we will comment that we find no fault with the trial court's order overruling appellant's assignment of error regarding the hearing examiner's refusal to grant leave and issue subpoenas beyond the pre-hearing deadline. There was no error of law or an abuse of discretion. Accordingly, we overrule appellant's third assignment of error.

## V.  CONCLUSION

{¶ 39} Therefore, having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____