[Cite as *DeMio v. State Med. Bd. of Ohio*, 2025-Ohio-2606.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Phillip DeMio, | : | |
| Appellant-Appellant, | : | No. 24AP-752 |
| | | (C.P.C. No. 22CV-7289) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Medical Board of Ohio, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on July 24, 2025

**On brief:** *Graff & McGovern, L.P.A.*, *Brandon M. Smith*, and *James M. McGovern*, for appellant. **Argued:** *Brandon M. Smith*.

**On brief:** *Dave Yost*, Attorney General, *Kyle C. Wilcox*, and *Katherine Bockbrader*, for appellee. **Argued:** *Katherine Bockbrader*.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Appellant, Phillip DeMio, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("the board"), permanently revoking his license to practice medicine and surgery in this state. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Dr. DeMio is a physician who has been licensed to practice medicine and surgery in Ohio since 1987. By notice of opportunity for hearing dated January 9, 2019, the board notified Dr. DeMio that it proposed to take disciplinary action against his license to practice medicine and surgery in Ohio. In the notice, the board alleged that, in the course

of his treatment of 16 patients (5 adult and 11 pediatric), from about March 2012 until about September 2016, he, among other things: failed to properly document his diagnosis and treatment of these patients; failed to appropriately refer patients to specialists and/or implement specialist recommendations; failed to properly screen and monitor patients in connection with protracted prescribing of opioid medication; failed to appropriately complete, review, and/or document medical histories; failed to adequately review medical histories or physically examine patients to support diagnoses; inappropriately treated and cared for patients in connection with testing, diagnoses, and/or complaints; and prescribed a type or amount of medications unsupported under the circumstances. The board further alleged that, based on this conduct, Dr. DeMio practiced below the minimal standards of care, violating R.C. 4731.22(B)(2), (6), and (20). Dr. DeMio timely requested a hearing in response to the notice.

{¶ 3} The matter was heard before a board hearing examiner in December 2020 and January 2021. On August 17, 2022, the hearing examiner issued a 170-page report and recommendation. The hearing examiner found that Dr. DeMio, in providing care to 16 patients (5 adult and 11 pediatric) during the time at issue, practiced below the minimal standards of care. As to one, some, or all of the 5 adult patients, the hearing examiner found that Dr. DeMio practiced below the minimal standards of care in the following ways: he failed to review Ohio Automated Rx Reporting System reports or obtain urine drug screens in connection with prescribing certain medications; failed to "complete and/or document the completion of an appropriate history and physical examination to establish a diagnosis and treatment plan, and . . . consistently failed to document vital signs"; maintained documentation that "was inadequate, difficult to read and follow, and difficult to determine the dates/dosages of medications"; "continued to prescribe controlled substance medication without seeing the patients for long periods of time"; treated the patients "with controlled substances for protracted periods of time without establishing a diagnosis of intractable pain, and without following the Board's intractable pain rules"; "failed to consistently assess the patient's functional status while prescribing opioid medication on a protracted basis"; "concomitantly prescribed opiates and benzodiazepines"; and "failed to appropriately implement specialist recommendations." (Findings of Fact at 1.)

{¶ 4}   As to all of the pediatric patients, the hearing examiner found Dr. DeMio failed to conform to the applicable minimal standards of care as follows: he "failed to appropriately identify or document the identification of a defined chief complaint"; failed to review, complete, and/or document patient's history of past and present "medical illness, medication list, [and] allergies," and review "systems and/or physical examination/assessment to support the documented diagnoses"; "failed to complete and/or document the completion of diagnostic testing to support the patients' diagnoses and treatment plan"; and prescribed a type or amount of medications or supplements "not supported by history, diagnosis, physical exam, and/or laboratory findings." (Findings of Fact at 2.)  As to one pediatric patient, the hearing examiner found that Dr. DeMio "failed to appropriately refer and/or document an appropriate referral to a behavioral health specialist." (Finding of Fact at 2.)

{¶ 5}   The hearing examiner concluded that these acts, conduct, or omissions, violated R.C. 4731.22(B)(2), (6), and (20).  Based on these violations, the hearing examiner recommended the indefinite suspension of Dr. DeMio's license, with conditions for reinstatement. Dr. DeMio filed objections to the hearing examiner's report and recommendation, and the board considered the matter at its meeting on September 14, 2022.  The board adopted the hearing examiner's findings of fact and conclusions of law, but it modified the sanction, voting to permanently revoke Dr. DeMio's license to practice medicine and surgery in Ohio.

{¶ 6}   Pursuant to R.C. 119.12, Dr. DeMio filed an appeal from the board's permanent revocation order to the trial court.  The court concluded that reliable, probative, and substantial evidence supported the board's order, and that the board's order is in accordance with law.  Therefore, the court affirmed the board's order.

{¶ 7}   Dr. DeMio timely appeals.

## II.  Assignments of Error

{¶ 8}   Dr. DeMio assigns the following five assignments of error for our review:

> I. The Lower Court abused its discretion by determining that the Order was issued in accordance with law despite the Board's failure to consider R.C. 4321.227.

II. The Lower Court abused its discretion by determining that the Order was issued in accordance with law despite the Board's failure to explain its departure from the Report and Recommendation.

III. The Lower Court abused its discretion by determining that the Order was based on a preponderance of reliable, probative, and substantial evidence and was issued in accordance with law despite the Board and its experts relying on the wrong standard of care.

IV. The Lower Court abused its discretion by determining that the Order was based on a preponderance of reliable, probative, and substantial evidence despite the fact that the Board drew improper inferences while acting as its own expert.

V. The Lower Court abused its discretion by determining that the Order was issued in accordance with law despite the Board considering items outside of the Notice.

## III. Standard of Review

{¶ 9} In reviewing an order of an administrative agency in an R.C. 119.12 appeal, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980); *Applegate v. State Med. Bd. of Ohio*, 2007-Ohio-6384, ¶ 10 (10th Dist.). "To be 'reliable,' evidence must be dependable and true within a reasonable probability." *Id.*, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). "To be 'probative,' evidence must be relevant, or, in other words, tend to prove the issue in question." *Id.*, citing *Our Place* at 571. "To be 'substantial,' evidence must have importance and value." *Id.*, citing *Our Place* at 571.

{¶ 10} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist. 1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's

resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 11} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 12} We first address together Dr. DeMio's first and third assignments of error, as they involve interrelated issues. Dr. DeMio's first assignment of error alleges the trial court erred in affirming the board's order because the board, in its standard of care analysis, failed to account for the statute that authorizes alternative medical treatments, R.C. 4731.227. And his third assignment of error contends the court erred in affirming the board order because the board and its experts applied the wrong standard of care. Dr. DeMio argues the board did not apply the standard of care for similar practitioners under the same or similar circumstances; instead, according to him, the board erroneously applied the standard of care applicable to a pain management specialist and a board certified pediatrician, even though he is a general practitioner, not a pain management specialist or a board certified pediatrician. These assignments of error lack merit.

{¶ 13} Chapter 4731 of the Revised Code vests the board with broad authority to regulate the medical profession in Ohio and to discipline physicians for non-compliant conduct. *Griffin v. State Med. Bd. of Ohio*, 2009-Ohio-4849 (10th Dist.). The board is uniquely situated with the experience and expertise to review a medical provider's conduct for conformity with all applicable requirements and standards. By statute, eight of the 12 members of the board are physicians licensed to practice medicine in Ohio. R.C. 4731.01. Because the " 'board is comprised of individuals who are trained medical professionals, . . .

[it] may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care.' " *Valko v. State Med. Bd. of Ohio*, 2023-Ohio-4676, ¶ 12 (10th Dist.), quoting *Demint v. State Med. Bd. of Ohio*, 2016-Ohio-3531, ¶ 18 (10th Dist.). This requires court deference to the board's determination of the applicable standards of care and whether those standards have been violated. *See Yoonessi v. State Med. Bd. of Ohio*, 2024-Ohio-169, ¶ 5 (10th Dist.) (confirming court deference to the board's "own expertise as to 'the technical and ethical requirements of its profession' "), quoting *Pons* at 621.

{¶ 14} A basic premise of Dr. DeMio's challenge to the board's findings is that the existence of R.C. 4731.227 should have altered in some way the board's standard of care analysis. Pursuant to R.C. 4731.227, "[a]n individual authorized to practice medicine and surgery . . . may use alternative medical treatments if the individual has provided the information necessary to obtain informed consent from the patient and the treatment meets the standards enforced by the state medical board pursuant to section 4731.22 of the Revised Code and any rules adopted by the board." For this purpose, " 'alternative medical treatment' means care that is complementary to or different from conventional medical care but is reasonable when the benefits and risks of the alternative medical treatment and the conventional medical care are compared. 'Alternative medical treatment' does not include treatment with an investigational drug, product, or device under section 4731.97 of the Revised Code." *Id.*

{¶ 15} R.C. 4731.22 authorizes disciplinary action for, among other things, "[f]ailure to maintain minimal standards applicable to the selection or administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease"; "[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established"; and "violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provisions of this chapter or any rule promulgated by the board." R.C. 4731.22(B)(2), (6), and (20).

{¶ 16} Considering this statutory framework, we reject Dr. DeMio's contention that R.C. 4731.227 altered his obligations under R.C. 4731.22. The ability to use alternative medical treatment and compliance with R.C. 4731.22, including conforming to the

applicable minimal standards of care, are not mutually exclusive concepts. R.C. 4731.227 expressly requires that any use of alternative medical treatment also comply with the requirements of R.C. 4731.22. This means that while alternative modalities may be utilized to treat a patient, their use must nevertheless comply with the requirements of R.C. 4731.22. Consequently, regardless of how Dr. DeMio seeks to frame R.C. 4731.227's allowance of the use of alternative medical treatment, or how he characterizes the care he used, he was required to adhere to R.C. 4731.22's requirement not to depart from, or fail to conform to, the minimal standards of care. Thus, Dr. DeMio's argument that the board failed to consider R.C. 4731.227 is unpersuasive.

{¶ 17} The board found that Dr. DeMio failed to conform to the minimal standards of care in various ways, thereby violating R.C. 4731.22(B)(2), (6), and (20). Dr. DeMio, relying on *Lawrence v. State Med. Bd.*, 1993 Ohio App. LEXIS 1437 (10th Dist. Mar. 11, 1993), argues the board, in reaching this finding, unfairly held him to the standards of specialists, not "similar practitioners," or generalists, such as himself. In *Lawrence*, this court held that an "expert must be capable of expressing an opinion grounded in the particular standard of care applicable to the area of practice for the physician facing discipline." *Leak v. State Med. Bd. of Ohio*, 2011-Ohio-2483, ¶ 12 (10th Dist.), citing *Lawrence*. Thus, an expert may testify in a medical board proceeding if the expert's experience and practice is similar to the physician facing discipline. *Id.* Here, the board called two physicians to testify as experts, Dr. Tricia Croake-Uleman and Dr. Bradley Jackson. Dr. DeMio asserts that Dr. Croake-Uleman held him to the standard of a pain management specialist with the same "specialized knowledge" and "understanding" of pain management as Dr. Croake-Uleman. (Appellant's Brief at 30, citing Tr. Vol. II at 353.) Dr. DeMio also asserts that Dr. Jackson applied "the standard of care for a board certified pediatrician," resulting in Dr. DeMio being held to the standard for a specialist. (Appellant's Brief at 30, citing Tr. Vol. III at 618-19, 622.) We disagree.

{¶ 18} At the hearing, Dr. DeMio did not timely challenge the competency of the board's experts to testify regarding the standards applicable to Dr. DeMio's care of the 16 patients. Dr. Croake-Uleman practices in pain management and Dr. Jackson practices in pediatrics, and both were recognized as expert witnesses, without objection. Dr. Croake-Uleman indicated in her testimony that her opinions in this matter regarding the minimum

standard of care related to any physician providing the care at issue. And in her report, admitted at the hearing, she opined that Dr. DeMio failed to conform to the "minimal standards of care of similar practitioners under the same or similar circumstances." (State's Ex. 18.) Similarly, although Dr. Jackson stated at one point during the hearing that he was "applying the standard of care for a board certified pediatrician," he also provided opinions regarding the minimal standards of care under the circumstances, without differentiating between any standard that would apply to a specialist, like himself, as opposed to a generalist providing care to a pediatric patient. (Tr. Vol. III at 618.) Further, Dr. Jackson expressly opined in his report, which was admitted into evidence at the hearing, that Dr. DeMio "failed to conform to minimal standards of care of similar practitioners under the same or similar circumstances." (State's Ex. 19.) Thus, the experts' opinions, concerning Dr. DeMio's departure from the minimal standards of care under the circumstances, were not contingent on his level of specialized training. Nor did the board indicate it was holding Dr. DeMio to a higher standard of care as a specialist; it found that Dr. DeMio had failed to conform to the minimal standards of care of similar practitioners under the same or similar circumstances. In the final analysis, we must remain mindful the board is entitled to deference because it has the expertise and training to determine whether a physician failed to conform to the minimal standards of care within the medical profession as required under R.C. 4731.22. *See Banker v. State Med. Bd.*, 2024-Ohio-6009, ¶ 17 (10th Dist.) ("[W]hile [the sanctioned physician] may wish to make all 'standards of care' determinations into legal questions subject to de novo review, it is both obvious and axiomatic that judges are not trained to understand medical care better than doctors."). Therefore, Dr. DeMio's reliance on *Lawrence* is unpersuasive, and he fails to show the board erroneously held him to a higher standard of care applicable to a specialist.

{¶ 19} For these reasons, we overrule Dr. DeMio's first and third assignments of error.

{¶ 20} In Dr. DeMio's second assignment of error, he contends the trial court erred in affirming the board's order because the board did not explain its departure from the hearing examiner's recommendation. We disagree.

{¶ 21} Pursuant to R.C. 119.09, "[t]he recommendation of the . . . examiner may be approved, modified, or disapproved by the agency. . . if the agency modifies or disapproves

the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." Here, the hearing examiner, based on Dr. DeMio's violations, recommended the indefinite suspension of Dr. DeMio's license, with conditions for reinstatement. The board adopted the hearing examiner's findings of fact and conclusions of law, but not the recommended sanction. Instead, it decided to amend the hearing examiner's proposed order and permanently revoke Dr. DeMio's license to practice medicine and surgery in Ohio. The trial court found that the board's minutes contain ample reasoning for its departure from the hearing examiner's penalty recommendation. We agree with the court's finding.

{¶ 22} The board's minutes reflect the members' thoughtful and earnest deliberation concerning the proper penalty to impose for Dr. DeMio's violations. The board members thoroughly discussed Dr. DeMio's misconduct and the significance of that misconduct moving forward—in particular, whether he ever again should be permitted to practice medicine in any capacity. Board members acknowledged Dr. DeMio's compassion for his patients, and that his misconduct was not profit driven. But board members also expressed great concern that Dr. DeMio's approach could not be remedied because of his consistent and blatant disregard of science-based diagnoses and treatment, combined with an overreliance on his own instincts to implement unnecessarily dangerous treatment plans. Notably, board member Dr. Jonathan B. Feibel, who moved to amend the proposed order to permanently revoke Dr. DeMio's license, commented "that he would not want one of his family members to be treated by Dr. DeMio because he would not trust that the family member is receiving the scientifically-based standard of care. Dr. Feibel stated that patients should expect scientifically-based care." (Bd. Meeting Minutes at 18.) Dr. Feibel further stated that Dr. DeMio's actions were dangerous, "and to allow such a person to return to the practice of medicine in any circumstance would be reckless." (Bd. Meeting Minutes at 15.) Similarly, board member Dr. Yeshwant P. Reddy commented that he "sees emotions over science in this case. . . Dr. DeMio means well, but his methods are not acceptable medicine." (Bd. Meeting Minutes at 13.) Ultimately, the board voted to permanently revoke Dr. DeMio's license. Because the minutes included the board's reasons for modifying the hearing examiner's indefinite suspension recommendation to a permanent revocation, the board complied with R.C. 119.09.

{¶ 23} Accordingly, Dr. DeMio's second assignment of error is overruled.

{¶ 24} Dr. DeMio's fourth assignment of error alleges the trial court abused its discretion in finding that the board's order was based on reliable, probative, and substantial evidence because the board made improper inferences while acting as its own expert. We are unpersuaded.

{¶ 25} Dr. DeMio argues board members made erroneous statements at their meeting reflecting inaccurate views and understandings of the matter. He challenges various comments made by board member Dr. Schottenstein. Namely, he asserts Dr. Schottenstein incorrectly stated that Dr. DeMio perceived himself as an expert in child psychiatry, chronic pain management, and infectious disease; that he did not have formal training in these areas; that he endorses a link between vaccines and autism; that he failed to meet the standards of care despite not considering R.C. 4731.227; and that his patients got better, not because of the care they received, but due to the placebo effect of counseling. These challenges to Dr. Schottenstein's statements are unavailing. As discussed above, we reject Dr. DeMio's argument concerning R.C. 4731.227. Further, Dr. Schottenstein's challenged comments reflect his view of how Dr. DeMio perceives his own expertise and training. In response to Dr. DeMio's argument that patients improved under his care, Dr. Schottenstein discussed the uncertainty concerning such issues as whether these patients were properly diagnosed, whether Dr. DeMio's "machine gun" approach treated an undiagnosed condition by accident, and whether they falsely perceived themselves as improving because of the attention and time Dr. DeMio provided to them. (Bd. Meeting Minutes at 14.) Dr. Schottenstein rejected Dr. DeMio's suggestion that patient improvement necessarily justified his treatment approach, and further emphasized that ignoring scientific principles in the practice of medicine is dangerous. In this regard, Dr. Schottenstein noted that Dr. DeMio's professed belief of some causal link between childhood vaccines and autism "has been thoroughly debunked." (Bd. Meeting Minutes at 13.) Thus, we are unpersuaded by Dr. DeMio's critique of Dr. Schottenstein's comments.

{¶ 26} Dr. DeMio asserts that board member Dr. Feibel incorrectly alleged at the meeting that he does not believe Lyme disease is caused by a tick. Dr. Feibel stated in part that "it is fairly well elucidated that Lyme disease is caused by a tick, yet Dr. DeMio would not agree with that fact." (Bd. Meeting Minutes at 18.) In challenging this statement,

Dr. DeMio notes that, at the hearing, he recognized that "virtually almost all the cases [of Lyme disease] are from black legged ticks." (Tr. Vol. VI at 1303.) But he also was equivocal and indicated his belief that other insects can transmit this disease to humans. Dr. Jackson testified that the "Red Book," an infectious disease compendium supported by the American Academy of Pediatrics, indicates that the "black legged tick" is the sole known vector for this disease. (Tr. Vol. III at 457.) The Centers for Disease Control ("CDC") also identifies this tick, and nothing else, as the cause of Lyme disease. Despite this, Dr. DeMio continues to express a belief that other insects can and do transmit the disease. Therefore, board member concern that Dr. DeMio rejects science in favor of his own belief system—as illustrated by his view on possible causes of Lyme disease—is supported in the record.

{¶ 27} Lastly, Dr. DeMio contends that board member Dr. Harish Kakarala wrongly alleged that he exploited vulnerable patients and that his use of hyperbaric therapy posed significant risk to his patients. Dr. DeMio cites his own testimony for the appropriateness of his use of this type of therapy. Dr. Kakarala, who has practiced hyperbaric medicine, explained the dangers associated with the use of hyperbaric therapy and the importance of proper screening and evaluation of factors before this type of therapy is used. Dr. Kakarala found no documentation that Dr. DeMio ensured the necessary pre-screenings were done prior to the use of this therapy or that the patients were properly informed of its risks. Dr. DeMio does not challenge that finding, and his disagreement with Dr. Kakarala's opinion that these circumstances involved desperate patients or patient families being exploited, does not invalidate it.

{¶ 28} Because Dr. DeMio fails to show the board made improper inferences in support of its order, we overrule his fourth assignment of error.

{¶ 29} In his fifth assignment of error, Dr. DeMio contends that the board improperly considered items outside the notice of opportunity for hearing, thereby violating his due process rights. This assignment of error is not well-taken.

{¶ 30} Pursuant to R.C. 119.07, the board must provide notice to a party and the notice "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of service." This statute is consistent with principles of due process. It is axiomatic that "[d]ue process entitles an individual to

fair notice of the precise nature of the charges to be brought forth at a disciplinary proceeding." *Applegate*, 2007-Ohio-6384, at ¶ 23 (10th Dist.), citing *Althof v. Ohio State Bd. of Psychology*, 2007-Ohio-1010, ¶ 19 (10th Dist.). But due process is not violated unless the individual is actually disciplined for activities not mentioned in the hearing notice. *Id.*

{¶ 31} In setting the appropriate sanction for violations alleged and proven, the board may consider mitigating and aggravating circumstances, including uncharged misconduct. *Macheret v. State Med. Bd. of Ohio*, 2010-Ohio-3483, ¶ 28 (10th Dist.). *See Froehlich v. Ohio State Med. Bd.*, 2016-Ohio-1035, ¶ 31 (10th Dist.) (finding medical review board may consider aggravating circumstances, including uncharged misconduct, when considering the appropriate sanction against the physician); *Urban v. Ohio State Med. Bd.*, 2004-Ohio-104, ¶ 17 (10th Dist.) (noting the board may consider mitigating and aggravating circumstances in deciding on the appropriate penalty for physician misconduct).

{¶ 32} Dr. DeMio asserts he was improperly sanctioned for having a purported " 'unfalsifiable belief system,' " " 'hubris,' " and a " 'stubbornness and inability to look inward.' " (Appellant's Brief at 42, quoting Bd. Meeting Minutes at 13, 15, and 18.) He argues the board violated his due process rights by considering these psychoanalytic factors in determining the proper sanction even though they were outside the scope of the notice of opportunity for hearing, which detailed his deviations from the standards of care. This argument is unpersuasive. The board's discussion of Dr. DeMio's mindset or perceived arrogance was relevant to its consideration as to whether Dr. DeMio was likely to alter the way he practiced medicine to meet the minimal standards of care for future patients; it was not the reason he was disciplined. As the trial court aptly observed, the "so-called psychoanalytical factors . . . merely reflect the Board's position as to whether Dr. DeMio at the hearing exhibited humility and self-reflection, given the established violations [the board] ultimately determined that Dr. DeMio's own belief system was dangerous and that he appeared incapable of remediation." (Nov. 21, 2024 Decision & Entry at 21.) In sum, Dr. DeMio fails to show the board violated his due process rights by disciplining him for activities not mentioned in the hearing notice.

{¶ 33} Accordingly, we overrule his fifth assignment of error.

## V. Disposition

{¶ 34} Having overruled all five of Dr. DeMio's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

————————————————