[Cite as *Hartman v. State Med. Bd.*, 2026-Ohio-1726.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| David M. Hartman, M.D., | : | |
| Appellant-Appellant, | : | No. 25AP-159 |
| | | (C.P.C. No. 24CV-5423) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Medical Board of Ohio, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on May 12, 2026

**On brief:** *Dinsmore & Shohl, LLP*, *Eric J. Plinke*, and *LaTawnda N. Moore*, for appellant. **Argued:** *Eric J. Plinke.*

**On brief:** *Dave Yost*, Attorney General, *Kyle C. Wilcox*, and *D. Grant Wilson*, for appellee. **Argued:** *D. Grant Wilson.*

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1}   Appellant, David M. Hartman, M.D., appeals from a decision of the Franklin County Court of Common Pleas affirming an order of appellee, State Medical Board of Ohio ("Board"), permanently revoking Hartman's license to practice medicine and surgery in Ohio.  For the reasons that follow, we affirm.

**I.  Facts and Procedural History**

{¶ 2}   Hartman has been a licensed physician in Ohio since 2004.   The proceedings against Hartman stemmed from two notices from the Board in March and August 2023, the second of which led to the summary suspension of Hartman's license. The Board alleged that Hartman contravened rules governing liposuction in an office setting, committed sexual misconduct, and deviated from the minimal standards of care,

in violation of Adm.Codes 4731-25-05 and 4731-26-02, and R.C. 4731.22(B)(6) and (20). The violations involved 13 of Hartman's patients.

{¶ 3}   Hartman requested a hearing on the allegations in each of the Board's notices.  The two matters were eventually consolidated, and hearings occurred over the course of six days in March 2024.  During the hearings, counsel for the Board ("the state") presented the testimony of expert witness Tyler M. Angelos, M.D., regarding Patients 1 through 10, and Gregory A. Surfield, M.D., regarding Patients 11 and 12.  The state also presented the testimony of Patients 11 and 13, and called Hartman for cross-examination. Hartman presented the expert testimony of Brian Dorner, M.D., regarding Patients 1 through 10, and Hartman testified as his own expert witness regarding Patients 11 and 12. He also testified as a factual witness, and he presented the testimony of several of his prior employees and patients.  Hartman also called a Board investigator to the stand as a witness, though he was limited in his examination of the investigator due to the legal prohibition against revealing confidential investigatory information or materials, R.C. 4731.22(F)(5).

{¶ 4}   The documentary and testimonial evidence introduced at the hearings indicated that Hartman completed a residency program in Otolaryngology-Head and Neck Surgery (commonly referred to as Ear, Nose, and Throat, or "ENT") in 2004.  Based on his ENT residency, he obtained board certification for ENT in 2004 and for facial plastics and reconstructive surgery in 2016.  He was not board certified for general plastic surgery.  Hartman opened an ENT practice named "ENT Allergy & Sinus Center" in 2004. (Mar. 25, 2024 Tr. Vol. II at 47.)  In 2014, Hartman began an "offshoot" cosmetic medical practice at his office, which he named "Fine Arts Skin & Laser."  *Id*. at 60.  By 2022, he focused entirely on his cosmetic medical practice.

{¶ 5}   Hartman performed plastic surgery procedures in-office (as opposed to a hospital or ambulatory surgery center) using local anesthesia.  Relevant to the Board's notice of violations, Hartman performed liposuction on Patients 1 through 10, a brachioplasty (otherwise known as an "arm lift") on Patient 11, a breast augmentation with implants on Patient 12, and various minor procedures on Patient 13.

{¶ 6}   Hartman's alleged rule violations with Patients 1 through 10 were mostly based on the fact that he was performing some other plastic surgery procedure on the

patient, and that the liposuction was not a routine part of that procedure. Adm.Code 4731-25-05(B)(8) and (F). Hartman performed full or partial abdominoplasties (otherwise known as a "tummy tuck") on Patients 1, 5, 6, 8, and 9, and performed liposuction on areas of the body other than the abdomen, such as the flanks, thighs, and back. He performed a skin resection of the anterior axillary area (otherwise known as a "bra-roll tuck") on Patient 2 and performed liposuction on the patient's abdomen, flanks, and inner thighs. He performed a facelift on Patient 3 and performed liposuction on the patient's abdomen, flanks, anterior axillary area, and under the chin. Hartman also performed liposuction, in addition to tummy tucks, on Patients 4 and 10, though the hearing examiner later determined that Hartman's combination of procedures in those particular cases did not violate Adm.Code 4731-25-05(B)(8). Additional evidence indicated that Hartman committed rule-based violations by removing more than the maximum allowable amount of lipoaspirate for Patient 7, by failing to document the amount of lipoaspirate that he removed from Patients 1 and 3, and by failing to document various other important parts of assessments and procedures for his patients.

{¶ 7} The state presented evidence indicating that Hartman more generally departed from minimal standards of care with Patients 4, 11, and 12. Regarding Patient 4, she revealed in her intake paperwork that she had pre-existing conditions, including type 1 diabetes and hypertension. Hartman's records did not show that he performed a pre-operative assessment prior to her tummy tuck and liposuction procedure. After the surgery, the patient's blood pressure plummeted, and she fainted. Hartman sent her home after her blood pressure improved. At home, the patient fainted again and went to the hospital by ambulance. She spent the night in the Intensive Care Unit and was given a blood transfusion, IV fluids, and antibiotics.

{¶ 8} Regarding Patient 11, Hartman performed an arm lift, which is a procedure that removes excess skin and fat from the upper arm. He removed so much skin from one arm that he could not close the incision. He used two pieces of the discarded tissue as a graft to close the wound. The graft measured approximately 23-by-7 centimeters and included both a layer of skin and a layer of fat. He had the attending nurses suture the graft back onto the patient's arm. Hartman gave the patient an extra-large compression garment and sent her home. Her discharge instructions did not include any specific

information about limitations on arm movement, and Hartman later indicated that the patient did not need to elevate her arm. Two days after the surgery, Patient 11 sought the services of a different physician, who provided the remainder of her treatment as the skin became necrotic and needed to be removed. From January to December 2023, she underwent multiple surgeries to correct the problem, ending with an additional skin graft from her thigh. Patient 11 reported that the pain she experienced was so intense that she woke up screaming almost every night that year. An expert witness for the state testified that because Hartman did not remove the fat layer from the 23-by-7 centimeter graft, the graft had almost no chance of survival. The chance for survival was further reduced by Hartman's use of a post-operative compression garment that was so large that it did not provide compression, as well as his failure to place any restrictions on the patient's arm movement.

{¶ 9} The Board additionally alleged that Hartman violated the rules against sexual misconduct by making inappropriate comments to Patient 11. However, the hearing examiner determined that the claim was not adequately supported, and the Board dismissed the charge.

{¶ 10} Regarding Patient 12, Hartman performed a breast augmentation with implants. He placed one implant in a "pocket" that was partially beneath the pectoral muscle, and the other in a pocket on top of the muscle. (May 26, 2024 Tr. Vol. III at 98.) When the patient voiced concerns that the implants did not appear to be properly placed, Hartman assured her that both implants were correctly placed. Approximately five months later, the patient underwent another surgery with a different physician, who noted the uneven placement of the implants. Hartman entered a settlement agreement with the patient in January 2023 for the cost of the implants.

{¶ 11} Finally, regarding Patient 13, Hartman's alleged violation was based on sexual misconduct. Patient 13 was initially a tenant who leased space from Hartman for her massage therapy business starting in 2015. She became a patient around 2016 and started working for Hartman as an aesthetician in August 2017. Patient 13 testified that in September 2017, Hartman performed an after-hours laser treatment of scar tissue from Patient 13's previous breast-reduction surgery with another physician. After the procedure had concluded, Hartman opened the front of Patient 13's gown without her

consent. He commented that her breasts looked really good and that the surgeon did a good job. At another point in September 2017, Hartman was in Patient 13's portion of the office for a massage treatment. She left the room so that Hartman could disrobe and get under a sheet on the massage table. After Patient 13 reentered the room, Hartman rose from the table and stood naked in the room with an erection and a smile on his face. Patient 13 did not perform any massages on Hartman after that night. In 2018, Hartman's practice told Patient 13 that they needed to terminate her employment and lease for financial reasons.

{¶ 12} After the conclusion of the hearing and submission of exhibits and sealed exhibits, the hearing examiner allowed the record to remain open for parties to file written closing arguments. The hearing examiner subsequently submitted a report and recommendation, in which she found that Hartman had violated the office-based liposuction rules and departed from the minimal standard of care with Patients 1 through 3 and 5 through 9, *see* Adm.Code 4731-25-05; R.C. 4731.22(B)(6); that he had not violated the office-based liposuction rules with Patients 4 and 10, but that other aspects of Hartman's treatment of Patient 4 departed from the minimal standard of care; and that he had departed from the minimal standard of care with Patients 11 and 12, and committed sexual misconduct with Patient 13. *See* Adm.Code 4731-26-02; R.C. 4731.22(B)(6) and (20). The hearing examiner noted that Hartman's conduct with Patients 11 through 13 was egregious. As for Patients 1 through 10, the hearing examiner thoroughly discussed and analyzed whether each liposuction procedure could be considered a "focused, local small liposuction" and whether they constituted a routine part of the main procedure as required by Adm.Codes 4731-25-05(B)(8) and 4731-25-05(F). (Report & Recommendation at 41-42.) While liposuction appeared to be part of the main procedure for Patients 4 and 10, and was questionable for Patient 1, it was clearly not part of the main procedure for the remaining patients.

{¶ 13} The hearing examiner noted that Hartman expressed the intent to cease his plastic surgery practice and return to an ENT practice. She recommended imposing an indefinite suspension and numerous financial penalties. Given that Hartman's license had been summarily suspended since 2023, the examiner recommended that Hartman be eligible to apply for reinstatement after 60 days upon proof of completing courses

related to physician-patient boundaries, as well as courses on appropriately creating and maintaining medical records.

{¶ 14} Hartman objected to the hearing examiner's report and recommendation, raising the following arguments to the Board: (1) the state violated due process by continuing aspects of its investigation after sending its notice of violations, (2) the state violated R.C. 4731.22(F)(5) by failing to provide Hartman with a transcript of its confidential interview with one of Hartman's employees, (3) Dr. Angelo's testimony violated Adm.Code 4731-13-18(F) because it exceeded the scope of his expert report, and also violated the law because it resulted in discipline on matters without notice, (4) the hearing examiner should have disregarded Dr. Angelo's testimony and should have found Dr. Dorner to be more credible, (5) Adm.Code 4731-25-05 is unconstitutionally vague, (6) the hearing officer made unfair evidentiary rulings related to the dismissed sexual misconduct charge for Patient 11, (7) the hearing examiner made erroneous factual findings related to Hartman's treatment of Patient 11, (8) the hearing examiner made erroneous factual findings related to Hartman's treatment of Patient 12, and (9) the hearing examiner erred in finding Patient 13 to be credible.

{¶ 15} At the Board's hearing, Hartman acknowledged that he committed some mistakes and had been negligent with his documentation. He apologized for the effect he may have had on patients, but he denied the truth of Patient 13's sexual-misconduct allegation. The state argued that the Board should revoke Hartman's license rather than issuing an indefinite suspension as recommended by the hearing examiner. The state argued that permanent revocation was more in line with certain recent cases against other physicians, and that Hartman refused to acknowledge the scope of his misconduct.

{¶ 16} The Board agreed with the hearing examiner's findings of fact and conclusions regarding Hartman's violations. However, the Board rejected the examiner's recommended penalty and determined the appropriate sanction for Hartman's behavior would be a permanent revocation of his license to practice medicine and surgery. The Board rejected the hearing examiner's recommended sanction, reasoning that it was insufficient in light of the egregiousness of the conduct, with one Board member noting that Board members had more medical knowledge and better understood the import of Hartman's conduct. They were particularly disapproving of Hartman's treatment of

Patients 11 and 12, commenting that, in addition to departing from the standard of care, Hartman should have known that his lack of training would likely not allow him to comply with the standard of care. The Board described Hartman's habitual lack of recordkeeping as a blatant disregard of standards for keeping medical records, which could not be rehabilitated by taking a few courses about medical documentation.

{¶ 17} Hartman appealed the Board's decision to the Franklin County Court of Common Pleas. The trial court reviewed the record, the reasoning provided in the hearing examiner's report and recommendation, the minutes of the Board when deliberating on Hartman's objections, and the Board's decision. The trial court concluded that the Board's decision was supported by reliable, probative, and substantial evidence and was not contrary to law.

{¶ 18} Hartman filed a timely notice of appeal, and the matter is now before this court.

## II. Assignments of Error

{¶ 19} Hartman assigns the following eight assignments of error for our review:

> [I.] The trial court erred as a matter of law in applying the incorrect standard of review contrary to R.C. 119.12.
>
> [II.] The trial court erred as a matter of law in expanding *Macheret* as to expert testimony in violation of due process.
>
> [III.] Board's arbitrary application of R.C. 4731.22(F)(5) was contrary to law and due process.
>
> [IV.] Admission of expert testimony contrary to rule and entry was not in accordance with law and violated due process.
>
> [V.] Admission of video exhibits [was contrary] to rule and entry was not in [accordance] with law and violated due process.
>
> [VI.] The hearing process was fundamentally unfair in violation of due process by cumulative acts of the Board.
>
> [VII.] Findings of sexual misconduct as to Patient 13 were unreasonably sustained by the trial court.
>
> [VIII.] OAC 4731-25-05 is unconstitutionally vague and was arbitrarily applied to permanently revoke Dr. Hartman.

## III.  Discussion

### A. Standard of Review

{¶ 20}  When a common pleas court reviews an administrative agency's order in an R.C. 119.12 appeal, the court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order, and must also determine whether the order is in accordance with law.  *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980); R.C. 119.12.  Reliable evidence is evidence that can be trusted, with a reasonable probability that it is true.  *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).  Probative evidence is evidence that is relevant and tends to prove the issue in question.  *Id.*  Substantial evidence is evidence that has some importance and value to the issues being determined.  *Id.*  The trial court's review of the agency's decision "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof."  *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  The trial court is obligated to defer to the agency's resolution of evidentiary conflicts, but it must review questions of law de novo in order to determine whether the administrative order is " 'in accordance with law.' "  *Ohio Historical Soc. v. State Emp. Relations Bd.*, 1993-Ohio-182, ¶ 23, quoting R.C. 119.12.

{¶ 21}  Our review of the trial court's decision is more limited.  *Pons v. Ohio State Med. Bd.*, 1993-Ohio-122, ¶ 12.  "Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."  *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).  On most matters, the appellate court must determine only whether the common pleas court abused its discretion in reaching its decision. *Pons* at ¶ 12.  An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983).  Our review of purely legal questions, however, requires a de novo standard of review.  *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343-344 (1992).

{¶ 22}  We will review Hartman's assignments of error slightly out of order for ease of analysis.

**B. First Assignment of Error**

{¶ 23} In his first assignment of error, Hartman asserts that the trial court applied an improper standard of review when ruling on the Board's decision. He contends that the court's standard rested exclusively on the weight of the evidence and did not consider whether the Board's order was in accordance with law. He notes that almost all of his objections raise legal errors rather than factual issues.

{¶ 24} It is true that a trial court, when reviewing an appeal from an agency order, must determine whether the order "is in accordance with law" in addition to determining whether it "is supported by reliable, probative, and substantial evidence." R.C. 119.12(N). However, as Hartman concedes, the trial court did in fact address Hartman's arguments that aspects of the Board's proceedings were not in accordance with law.[1] Hartman contends that the trial court gave short shrift to his specific legal arguments. We conclude that the merits of those specific arguments are relevant to his other assignments of error rather than to the standard of review. Accordingly, we overrule his first assignment of error.

**C. Fourth Assignment of Error**

{¶ 25} In his fourth assignment of error, Hartman argues that Dr. Surfield should not have been allowed to testify about the training, certifications, and qualifications that Hartman listed on his curriculum vitae ("CV"). He argues that because Dr. Surfield's expert report did not include opinions about the details of Hartman's CV, the admission of his testimony on the subject was contrary to law.

{¶ 26} We note that although Hartman raised objections to the Board regarding Dr. Angelos's testimony on Hartman's qualifications, Hartman did not raise an objection to Dr. Surfield's testimony on the same grounds. Though Hartman eventually pointed to Dr. Surfield's testimony in his appellate argument to the trial court, he did not give the Board the opportunity to assess the hearing examiner's proceedings on those grounds in the first instance. " 'Generally, a party waives the right to appeal an issue that could have been but was not raised in earlier proceedings.' " *White v. State Med. Bd. of Ohio*, 2024-

---

[1] Although the trial court did not identify all of Hartman's assignments of error by number, it addressed the substance of his arguments, save for his assertion of error related to the admission of social media videos. However, as we explain more thoroughly in our analysis below, Hartman failed to preserve any error regarding the videos.

Ohio-1553, ¶ 19 (10th Dist.), quoting *MacConnell v. Ohio Dept. of Commerce*, 2005-Ohio-1960, ¶ 21 (10th Dist.); *see also Holzhauser v. State Med. Bd. of Ohio*, 2007-Ohio-5003, ¶ 21 (10th Dist.). Hartman has therefore forfeited the issue of Dr. Surfield's testimony on Hartman's qualifications. Though our analysis of Hartman's fourth assignment of error could end here, we will explain why it would also fail on the merits.

{¶ 27} Hartman asserts that the admission of Dr. Surfield's testimony regarding Hartman's qualifications and credentials violated the agency's rule requiring parties to produce expert reports pursuant to the hearing examiner's case-management schedule. *See* Adm.Code 4731-13-18(C). However, the state submitted Dr. Surfield's expert report in a timely manner in compliance with the case-management schedule. Hartman's argument appears to relate more to the agency rule requiring that an expert's report "shall set forth the opinions to which the expert witness will testify and the bases for such opinions." Adm.Code 4731-13-18(F). Although the agency rule provides that an expert witness's testimony should usually be excluded in the absence of a timely expert report, Adm.Code 4731-13-18(C)(3), the letter of the rule does not forbid expert testimony from exceeding the bounds of the expert report. *Compare* Adm.Code 4731-13-18(F) *with* Civ.R. 26(B)(7)(c) ("An expert will not be permitted to testify or provide opinions on matters not disclosed in his or her report."). Hartman has not pointed to a rule or statute that required the hearing examiner to exclude Dr. Surfield's testimony as a matter of law.

{¶ 28} By arguing that the admission of Dr. Surfield's testimony did not comply with certain administrative code provisions, Hartman attempts to bring our focus to a legal issue that we would have to review de novo. However, the substance of his argument is simply about the admission of evidence. A trial court's evidentiary rulings, including rulings on the admission of expert testimony, are not to be disturbed absent an abuse of discretion. *Valentine v. Conrad*, 2006-Ohio-3561, ¶ 9; *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 370 (1986); *Rush v. Univ. of Cincinnati Physicians, Inc.*, 2016-Ohio-947, ¶ 15 (1st Dist.). We must employ an abuse-of-discretion standard of review, notwithstanding a party's attempt to reframe an evidentiary issue as a purely legal argument. *See State v. Morris*, 2012-Ohio-2407, ¶ 20-22 (reviewing court should not have reviewed, as a matter of law, whether certain evidence fit within Evid.R. 404(B), and

instead should have reviewed the trial court's evidentiary decisions for abuse of discretion).

{¶ 29} Hartman fails to develop an argument that the specific evidentiary ruling at issue was an abuse of discretion. He does argue that the hearing examiner's rulings were unfair when considering the totality of his proceedings; however, he presents that same argument in his sixth assignment of error, and we will therefore not address it here. Accordingly, we overrule his fourth assignment of error.

### D. Second Assignment of Error

{¶ 30} In his second assignment of error, Hartman argues that the Board should not have considered Dr. Surfield's testimony about the training, certifications, and qualifications that Hartman listed on his CV. He argues that his allegedly inadequate qualifications constituted a new charge of misconduct for which he received no notice. He acknowledges that the Board may be allowed to consider some uncharged conduct as an aggravating or mitigating circumstance, as stated in *Macheret v. State Med. Bd. of Ohio*, 2010-Ohio-3483 (10th Dist.). However, he argues that the Board could not consider such uncharged conduct in this case because (1) admission of the evidence was contrary to law as stated in his fourth assignment of error, (2) the evidence came from a state witness rather than the respondent, and (3) insufficient training is not an aggravating factor in the Board's disciplinary guidelines.

{¶ 31} We disagree with Hartman's initial premise that a lack of certain training or qualifications was considered the basis of any of Hartman's violations. We have previously rejected similar arguments. *See, e.g., de Bourbon v. State Med. Bd. of Ohio*, 2018-Ohio-4682, ¶ 37-38 (10th Dist.) (the Board's consideration of lack of training did not give rise to an official violation that required prior notice); *Banker v. State Med. Bd. of Ohio*, 2024-Ohio-6009, ¶ 16 (10th Dist.) (rejecting the appellant's claim that the Board's consideration of lack of training constituted a charge that should have been included in the Board's notice). The Board's findings that Hartman departed from the minimal standards of care under the circumstances for his patients, R.C. 4731.22(B)(6), were based on specific actions that would have been below the minimal standard of care even if they had been committed by an incredibly experienced physician. The expert

testimony supporting the Board's findings was likewise "not contingent on his level of specialized training." *Demio v. State Med. Bd. of Ohio*, 2025-Ohio-2606, ¶ 18 (10th Dist.).

{¶ 32} The Board was not precluded from considering Hartman's training and qualifications when determining an appropriate sanction. *Macheret* at ¶ 27; *White*, 2024-Ohio-1553, at ¶ 21 (10th Dist.). We disagree with Hartman's argument that the reasoning in *Macheret* and similar cases should not apply to Hartman for the reasons he has given.

{¶ 33} To the extent that Hartman's argument regarding *Macheret* addresses the admission of Dr. Surfield's testimony as an evidentiary matter, we conclude, as with his fourth assignment of error, that he has forfeited the error and has otherwise failed to demonstrate an abuse of discretion. We also reject Hartman's contention that the Board's disciplinary guidelines preclude consideration of lack of training or qualifications. The Board's guidelines are not binding regarding permissible sanctions. *See Ross v. State Med. Bd. of Ohio*, 2004-Ohio-2130, ¶ 10 (10th Dist.); *Schechter v. State Med. Bd. of Ohio*, 2005-Ohio-4062, ¶ 77 (10th Dist.). Moreover, the Board's guidelines for aggravating and mitigating circumstances permit the Board to consider whether Hartman's misconduct resulted from reckless behavior. *See* Disciplinary & Fining Guidelines, Appendix B, Aggravation, (i) (Rev. 2020) ("Willful or reckless misconduct."). Providing specialized treatment to patients despite minimal training in the specialty area may be considered as reckless misconduct. *See Demio v. State Med. Bd. of Ohio*, 2024 Ohio Misc. LEXIS 2971, *28-29 (Nov. 21, 2024), *aff'd*, 2025-Ohio-2606 (10th Dist.).

{¶ 34} We also reject Hartman's contention that the Board was precluded from considering evidence about Hartman's training and qualifications merely because it was presented in the state's case in chief. Even if the evidence could be considered out of order, a trial court has the discretion to allow the submission of evidence in such a manner. *Cairelli v. Brunner*, 2016-Ohio-5535, ¶ 49 (10th Dist.) (a trial court has "discretion to permit evidence to be offered out of order"). Hartman describes the state's evidence as a "surprise aggravating factor." (Appellant's Brief at 1.) However, the purportedly surprising evidence comprised little more than Dr. Surfield reading through Hartman's CV and identifying what information it did and did not contain. Dr. Surfield noted that Hartman was certified for facial plastic and reconstructive surgery, but his CV did not include specialized training for plastic surgery specific to the arms or breasts. He

observed that one entry regarding in-office training likely described supervised training in Hartman's office. Dr. Surfield noted that some of the listed trainings were conducted by product manufacturers, meaning they focused on a specific device or product rather than on surgery. Dr. Surfield provided context for some of Hartman's listed activities, explaining that one particular symposium featured live-streamed case presentations rather than hands-on experience. Dr. Surfield noted that Hartman had listed various single instances of specialized procedures during his residency training on body-wide reconstruction, and he opined that a doctor would need to perform such procedures more than once to understand "anatomical considerations and variations that can arise." (Mar. 26, 2024 Tr. Vol. III at 40.)

{¶ 35} Hartman can hardly claim to be surprised by the contents of his own CV or the unremarkable observation that a doctor should perform a procedure more than once to understand all of the nuances and variations involved. Hartman submitted his CV and his own expert report regarding Patients 11 and 12 in order to later testify that, in his expert opinion, he did not deviate from the standard of care in his treatment of those patients. Because Hartman put his training and qualifications at issue by testifying as an expert on the standard of care, the Board was well within its discretion to consider testimony about the contents of his CV. *See de Bourbon* at ¶ 38. We overrule Hartman's second assignment of error.

### E. Third Assignment of Error

{¶ 36} In his third assignment of error, Hartman argues that the Board should have allowed him to present evidence of certain subpoenas for patient records that the Board issued during its investigation, and it should have allowed him to elicit testimony from a Board investigator about those subpoenas.

{¶ 37} We note that when Hartman raised objections to the hearing examiner's report and recommendation, he mentioned the deposition testimony of an employee that appears to relate to one subpoena, but he did not mention any of the other subpoenas, nor did he mention his attempt to elicit testimony from the Board investigator about the subpoenas. Because Hartman failed to raise a large portion of his argument to the Board in the first instance, he has largely forfeited the error he now claims. *White*, 2024-Ohio-1553, at ¶ 19 (10th Dist.). The remainder of his argument fails on its merits.

{¶ 38} Hartman argues that the hearing examiner misapplied the law governing the confidentiality of Medical Board investigations, R.C. 4731.22(F)(5), when deciding to limit Hartman's presentation of the above-described evidence, and that the hearing examiner's decision was therefore contrary to law. R.C. 4731.22(F)(5) provides that the complaint, the information that the Board receives during an investigation, and the investigator's report to the Board are all confidential. The Board is forbidden from disclosing "the names or any other identifying information about patients or complainants unless proper consent is given." R.C. 4731.22(F)(5). This statute did not require the hearing examiner to admit all of Hartman's evidence as a matter of law.

{¶ 39} As with his fourth assignment of error, Hartman has framed his argument here as an issue of law subject to de novo review, when it is actually an argument about an evidentiary ruling subject to review for abuse of discretion. *Morris*, 2012-Ohio-2407, at ¶ 20-22. He argues that the hearing examiner should not have allowed R.C. 4731.22(F)(5) to limit his presentation of evidence in this particular instance because he had an overriding interest in eliciting "exculpatory, supportive, and potential mitigating evidence" that he describes as "uncharged compliance." (Appellant's Brief at 19.) Although Hartman does not elaborate on the meaning of "uncharged compliance," it appears from the record that Hartman's intent was to introduce evidence that the Board did not charge violations regarding some of the patients that the Board had originally included in their investigation.

{¶ 40} The fact that Hartman may not have committed sexual misconduct or breached the standard of care with other patients is not probative to the question of whether he breached the standard of care in his treatment of Patients 1 through 12 or committed sexual misconduct related to Patient 13. *See Clayman v. State Med. Bd. of Ohio*, 133 Ohio App.3d 122, 129 (10th Dist. 1999) (consideration of outside cases "would not be probative of a lack of reliable, probative, and substantial evidence to support the order issued by the board in this case"). At best, his desired evidence would relate to penalty mitigation. The Board has the discretion to hear mitigating evidence, but it is not required to do so. *Urban v. State Med. Bd. of Ohio*, 2004-Ohio-104, ¶ 17-18 (10th Dist.); *Reed v. State Med. Bd. of Ohio*, 2005-Ohio-4071, ¶ 37 (10th Dist.). Hartman was permitted to provide mitigating evidence through the testimony of patients who had been

satisfied with Hartman's treatment, as well as numerous letters from patients that complimented Hartman's abilities as a doctor and decried the Board's action against him. The Board did not abuse its discretion in any way by limiting Hartman's additional attempt to present mitigation evidence through confidential investigatory materials. We therefore overrule Hartman's third assignment of error.

### F. Fifth Assignment of Error

{¶ 41} In Hartman's fifth assignment of error, he asserts that the Board should not have been allowed to present evidence of social media videos of Hartman because they were not disclosed in the Board's list of exhibits and witnesses. Hartman failed to raise this issue in his objections to the hearing examiner's report and recommendation. Hartman has forfeited his argument, which also fails on its merits.

{¶ 42} The subject of social media videos arose during the testimony of Hartman's witness, Patient A. She testified that she was a patient at Hartman's practice and later became an employee. Hartman asked Patient A about the culture or atmosphere at his practice. Patient A described the atmosphere of the practice as professional, fun, and friendly. Patient A shared that staff members at Hartman's practice made TikTok videos to potentially attract more customers. During cross-examination of Patient A, the state showed her a video from the practice's social media page, with no objection from Hartman. The video depicted female staff members pushing Hartman to the floor, after which he crawled and gyrated around while they swatted their hands toward his rear end. The state played another TikTok video—again without objection—depicting a man without proper surgical attire standing behind Hartman and cracking jokes while Hartman performs a surgical procedure on the man's wife. When the videos were later submitted into evidence, Hartman contested their relevance but did not object on the grounds now argued.

{¶ 43} Through Hartman's questions to Patient A on direct examination, he opened the door to the subject of the practice's social media presence and videos as they related to the practice's atmosphere and culture. The hearing examiner had the discretion to allow the state to present evidence of the videos during its cross-examination of the witness. *See Urban*, 2004-Ohio-104, at ¶ 16-18 (10th Dist.). Even if Hartman had

preserved this issue for appeal, there is no abuse of discretion apparent in the hearing examiner's ruling. We overrule Hartman's fifth assignment of error.

### G. Sixth Assignment of Error

{¶ 44} In his sixth assignment of error, Hartman argues that the errors he identified in his first five assignments of error had the cumulative effect of denying him his due process right to a fair trial.

{¶ 45} Hartman has a protected property interest in his certification to practice medicine and surgery. *Flynn v. State Med. Bd. of Ohio*, 2016-Ohio-5903, ¶ 45 (10th Dist.). Pursuant to Hartman's constitutional due process interests, a governmental agency must provide constitutionally adequate procedures before depriving Hartman of his protected property interest. *See Natoli v. Ohio State Dental Bd.*, 2008-Ohio-4068, ¶ 18 (10th Dist.), citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "A fundamental requirement of due process is 'the opportunity to be heard' . . . which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Due process requires a fair hearing, but it is also " 'flexible and calls for such procedural protections as the particular situation demands.' " *Mathews* at 334, quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972).

{¶ 46} An appellant bears the burden of showing that an error, even a due process error, caused identifiable prejudice. *Flynn* at ¶ 50; *Zedaker v. State Med. Bd. of Ohio*, 2024-Ohio-6108, ¶ 32 (10th Dist.). An appellant cannot merely point to multiple alleged errors and claim that the number of alleged errors alone establishes prejudice, because, among other reasons, "the cumulative error doctrine is not typically employed in civil cases." *Stanley v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-5140, ¶ 124 (10th Dist.). Moreover, "where there is no error, harmless or otherwise, there can be no cumulative error." *Willis v. Rd. King Trucking, L.L.C.*, 2024-Ohio-5921, ¶ 32 (10th Dist.).

{¶ 47} Hartman generally asserts that the hearing examiner enforced the administrative and evidentiary rules arbitrarily and unevenly in favor of the state, as evidenced by certain favorable rulings during the state's case in chief and certain unfavorable rulings during Hartman's case in chief. We disagree. Unfavorable rulings are not tantamount to prejudicially unfair rulings. Even considering together Hartman's

allegations that the Board: (1) allowed an expert to testify about the contents of Hartman's CV, which he had submitted in order to testify as his own expert, (2) did not allow Hartman to elicit penalty-mitigation evidence through confidential Board investigatory materials, (3) allowed the state to present videos of Hartman's practice with no objection, and (4) considered Hartman's lack of training as an aggravating factor, we discern no error, let alone cumulative error. As explained in our analysis of Hartman's individual assignments of error, the foregoing consideration of Hartman's lack of qualifications and the evidentiary rulings were well within the Board's discretion.

{¶ 48} Hartman has not established that the Board's proceedings denied him his right to due process. We overrule his sixth assignment of error.

### H. Seventh Assignment of Error

{¶ 49} In his seventh assignment of error, Hartman asserts that the sexual-misconduct violation related to Patient 13 was not supported by reliable, probative, and substantial evidence. Hartman argues that Patient 13 should not be believed because she was a disgruntled ex-employee, because she did not report Hartman's behavior immediately in 2017, and because her testimony was inaccurate about whether her breasts were partially covered during the laser treatment of her scars and whether the massage incident occurred on September 19 rather than September 20, 2017.

{¶ 50} The hearing examiner considered the foregoing issues and nonetheless found Patient 13 to be a credible witness. The hearing examiner further considered Hartman's testimony and found his theory of fabrication by a disgruntled employee to be implausible. The trial court was obligated to "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati*, 63 Ohio St.2d at 111. In our appellate review of the trial court's review of an administrative adjudication, we " 'cannot second guess the Board's credibility determinations.' " *Zedaker*, 2024-Ohio-6108, at ¶ 28 (10th Dist.), quoting *Applegate v. State Med. Bd. of Ohio*, 2007-Ohio-6384, ¶ 21 (10th Dist.).

{¶ 51} Hartman has failed to establish that the trial court committed an abuse of discretion in deferring to the Board's reasoned resolution of the evidentiary conflicts. We overrule Hartman's seventh assignment of error.

### I. Eighth Assignment of Error

{¶ 52} In his eighth assignment of error, Hartman challenges Adm.Code 4731-25-05(F) as unconstitutionally vague. The constitutionality of an administrative code provision is a question of law that we review de novo.

{¶ 53} The void-for-vagueness doctrine is founded in the Due Process Clause of the United States Constitution. *Buckley v. Wilkins*, 2005-Ohio-2166, ¶ 17. Due process requires that a law provide fair warning of the conduct prohibited, as well as standards for enforcement. *Id.* However, a law "is not void simply because it could be worded more precisely or with additional certainty." *Norwood v. Horney*, 2006-Ohio-3799, ¶ 86. The bar for rejecting a void-for-vagueness challenge is not a high one in the criminal context, and outside the context of First Amendment concerns, a civil statute is unconstitutionally vague only if it is substantially incomprehensible and so vague and indefinite that it is really not a rule or standard at all. *Buckley* at ¶ 19.

{¶ 54} The administrative-code provision at issue governs liposuction performed in an office setting (as opposed to a hospital or ambulatory surgery center). Adm.Code 4731-25-05. The administrative rule prohibits performing liposuction in an office "in combination with other procedures except as specifically authorized in paragraph (F) of this rule." Adm.Code 4731-25-05(B)(8). The exception provides that a physician is not prohibited from performing "procedures involving a focused, local small liposuction that is a routine part of the main procedure, provided that the physician complies with all other applicable rules." Adm.Code 4731-25-05(F). Hartman argues that the code provision is unconstitutionally vague because it does not define "focused," "local," "small," or "routine." (Appellant's Brief at 33.)

{¶ 55} Hartman offers no criticism of the language in the general prohibition of Adm.Code 4731-25-05(B)(8), which is clear and unambiguous. The exception to the prohibition in Adm.Code 4731-25-05(F) is easily understandable, and the terms that Hartman criticizes allow the agency to enforce its rule without separately defining every unique circumstance where the exception will arise. *See Maga v. Ohio State Med. Bd.*, 2012-Ohio-1764, ¶ 30 (10th Dist.) ("It is obvious that the legislature did not wish to define every situation that involves moral turpitude."). The language of Adm.Code 4731-25-05(F) is not so vague and indefinite that it fails to articulate any rule or standard at all. We overrule Hartman's eighth assignment of error.

## IV. Disposition

{¶ 56} Having overruled Hartman's eight assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and LELAND, JJ., concur.

———————————